**Dolores McNAMARA, Plaintiff;**

v.

**The ASSOCIATED PRESS, Defendant.**

**No. 12 Civ. 2559 (HBP).**

United States District Court,
S.D. New York.

Signed Aug. 21, 2014.

---

Dolores McNamara, Jersey City, NJ, pro se.

Joseph Blaise Cartafalsa, Putney Twombly Hall & Hirson LLP, New York, NY, for Defendant.

**OPINION AND ORDER**

PITMAN, United States Magistrate Judge:

### I. *Introduction*

This is an employment discrimination action brought by a *pro se* plaintiff against her former employer, the Associated Press (the "AP"). Construed liberally, plaintiff's complaint asserts claims under the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.* Defendant construes plaintiff's complaint to be asserting additional claims for violations of the minimum wage, overtime and anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* By notice of motion dated September 13, 2013 (Docket Item 17), defendant moves for an Order pursuant to Fed.R.Civ.P. 56, granting it summary judgment as to plaintiff's claims arising under the FLSA and dismissing plaintiff's complaint.

The parties have consented by my exercising plenary jurisdiction over this action pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, defendant's motion is granted with respect to plaintiff's claims arising under the FLSA. Plaintiff is also granted thirty days to oppose summary judgment independent of defendant's motion on plaintiff's remaining claims arising under the ADEA and NYSHRL.

### II. *Facts*

#### A. *Facts Giving Rise to Plaintiff's Claims*

This is an action arising out of plaintiff's employment as a sales associate for the AP from June 2010 to September 2011.

On June, 14, 2010, plaintiff was hired by the AP as a sales associate in the AP's video archive and business development

group (the "Group") (Affidavit of Alison Quan, dated Sept. 13, 2013, (Docket Item 20) ("Quan Aff.") at ¶ 2). Plaintiff's offer letter stated that she would earn a salary of $40,000 and "2% commission on all sales that [she] bill[ed] or generate[d]" (Quan Aff. at ¶ 5). In addition to her sales duties, plaintiff had some research responsibilities (Quan Aff. at ¶ 2; Deposition of Dolores McNamara, taken on June 25, 2013 ("McNamara Dep.") at 15:15–16:5, annexed as Exhibit A to the Affirmation of Joseph B. Cartafalsa, Esq., dated Sept. 13, 2013, (Docket Item 22) ("Cartafalsa Aff.")). She made phone calls, acquired new clients, documented orders, billed clients, generated contracts and conducted research (McNamara Dep. at 15:15–16:5). The parties dispute whether plaintiff's job duties also included performing research for other employees in the Group. Defendant contends that at or about the time of her hire, plaintiff was informed by the AP's sales director, Lloyd Pawlak, that she would be performing research for other employees in the Group; plaintiff contends that she was only expected to perform research on accounts that she generated or billed (*see* Affidavit of Lloyd Pawlak, dated Sept. 13, 2013, (Docket Item 21) ("Pawlak Aff.") at ¶ 3; McNamara Dep. at 15:11–14, 69:2–18).

In November of 2010, plaintiff was assigned to perform research for her direct supervisor, Claribel Torres, in order to help Torres secure business from a potential customer (the "Classmates.com Account") (Complaint, dated Apr. 3, 2012, (Docket Item 2) ("Compl.") at 6;[1] Quan Aff. ¶ 6). Plaintiff did not 'generate' or 'bill' the Classmates.com Account, and, therefore, under the terms of her offer letter and the AP's stated policies, was not entitled to a commission on any income generated from the Classmates.com Account (Pawlak Aff. at ¶¶ 6–7). Shortly after plaintiff began performing research for Torres, Torres promised to split with plaintiff the commission Torres would receive for securing the Classmates.com Account (McNamara Dep. at 12:15–13:14). Torres reiterated this promise to plaintiff on three occasions, but no other employees at the AP were aware of their agreement (McNamara Dep. at 13:5–14:11, 14:15–15:6).

On December 14, 2010, the Group held a staff meeting in order to discuss the implementation of a new billing system at the AP. During that meeting, Torres "stood up in front of everyone and said [to plaintiff][ "] are you sure you are going to be able to get this[ "]" (McNamara Dep. at 79:12–25; *see also* Compl. at 6). Plaintiff was the only employee more than forty years old in the meeting and was the only employee who was asked this question (Compl. at 6).

In January 2011, Torres received a commission from the Classmates.com Account (Compl. at 6; McNamara Dep. at 26:13–27:3). When plaintiff requested a portion of the commission, Torres told her that the AP would not allow her to split the commission (Compl. at 6; McNamara Dep. at 10:11–25).

On February 9, 2011, plaintiff attended a meeting with Pawlak. In the meeting plaintiff explained that Torres had refused to split the commission with her (Pawlak Aff. at ¶ 8). Pawlak told plaintiff that she was not entitled to and would not be paid a commission for the research she performed for the Classmates.com Account (Pawlak Aff. at ¶ 8). However, Pawlak

---

1. Plaintiff has utilized the form Complaint for Employment Discrimination provided by the Court's *Pro Se* Office, to which she has attached several documents that are not pag-inated. The citations herein utilize the pages numbers assigned to the attachments by the Court's electronic filing system.

subsequently approved and the AP paid plaintiff a discretionary bonus of $1,000 for the research she performed for the Class-mates.com Account[2] (Pawlak Aff. at ¶ 8).

Following plaintiff's meeting with Paw-lak, plaintiff was informed that she would start performing research for the entire Group in addition to the normal sales and research duties related to her own ac-counts (McNamara Dep. at 11:7–13). Plaintiff would also be responsible for com-pleting administrative tasks for Torres in-cluding setting up "a messenger service" and generating mailing labels (Compl. at 6–7; McNamara Dep. at 102:9–103:10). Plaintiff alleges that these additional tasks were onerous and that they would have prevented her from reaching her annual bonus goals (Compl. at 7).

On or about March 7, 2011, plaintiff requested a reduction in either her re-search or sales responsibilities (Compl. at 7; Quan Aff. at ¶ 11). The AP agreed to eliminate plaintiff's sales responsibilities with the proviso that plaintiff would no longer be eligible to earn commissions (Compl. at 7; Quan Aff. at ¶ 11).

On April 29, 2011, plaintiff met with Torres. Torres told plaintiff that she had overheard plaintiff speaking with co-work-ers about her salary and that plaintiff was adversely affecting the morale of the Group (Compl. at 7). Torres also told plaintiff that she was "going to have to write [plaintiff] up" and that plaintiff might not be a good fit for the company (Compl. at 7).

Three days later, on May 2, 2011, plain-tiff met with the AP's Human Resources Department. She recounted her interac-tions with Torres and requested an inter-vention (Compl. at 7).

In or about August 2011, plaintiff re-fused to perform the job duties of her new position and requested that she be consid-ered for an alternate sales position at the AP (Quan Aff. at ¶ 13). Plaintiff's request was denied because the AP believed that she was not qualified for the sales position (Quan Aff. at ¶ 13). Plaintiff requested that she be terminated, but was told by the Human Resources Department that if she did not perform her job duties, the AP would consider plaintiff to have voluntarily resigned (Quan Aff. at ¶ 13). On Septem-ber 2, 2011, plaintiff voluntarily resigned from her employment, and the AP accept-ed plaintiff's resignation (Quan Aff. at ¶ 14).

### B. Procedural Background

On December 5, 2011, plaintiff filed a claim against defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of sex and age in violation of Title VII and the ADEA (Compl. at 11). On January 11, 2012, the EEOC issued plain-tiff a notice of dismissal and right to sue letter (Complaint at 9).[3]

### III. Analysis

#### A. Plaintiff's Claims & Defendant's Motion

Although poorly drafted, plaintiff's com-plaint may be read to assert claims of age discrimination and retaliation under the ADEA and NYSHRL. In the form com-plaint plaintiff used to commence this ac-tion, plaintiff indicated that defendant's discriminatory acts consisted of "unequal

---

**2.** Plaintiff alleges that defendant also failed to pay her $200 that she was to receive for winning an internal sales competition. De-fendant states that plaintiff was recently given a $200 gift card (Compl. at 6; Cartafalsa Aff. at ¶ 5).

**3.** Plaintiff does not assert any claims under Title VII in this lawsuit.

terms of employment," "retaliation" and "unpaid wages." These correspond to the acts described in plaintiff's filing with the EEOC, in which plaintiff checked the boxes indicating that she had suffered retaliation and discrimination because of her age (Compl. at 11). Moreover, in a letter plaintiff sent the AP before filing a charge with the EEOC, she alleged that she had been subjected to a hostile work environment, retaliation and discrimination on the basis of age in violation of federal and state law and set forth the facts giving rise to those claims (Compl. at 5). Relying on statements plaintiff made at her deposition and on omissions in the complaint, defendant contends that plaintiff is not bringing claims under the ADEA (Def.'s Mem. at 2 ("Plaintiff admitted under oath that she is **not** pursuing claims under the ADEA or other EEO statute[s].") (boldface in original); Compl. at 1, 3). However, plaintiff's deposition testimony on the nature of the claims she is asserting is equivocal,[4] and she stated explicitly at the initial pre-trial conference on November 9, 2012 that she was alleging age discrimination and retaliation. In light of plaintiff's (albeit ambiguous) representations, and my obligation to read plaintiff's submissions as asserting the strongest arguments they suggest, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir.2013), I conclude that the complaint asserts claims under the ADEA and the NYSHRL.

Defendant's memorandum of law in support of its motion for summary judgment assumes that plaintiff has asserted only claims under the minimum wage, overtime and anti-retaliation provisions of the FLSA (*see* Memorandum of Law in Support of the Associated Press' Motion for Summary Judgment, dated Sept. 13, 2013, (Docket Item 23) ("Def.'s Mem.") at 5–8). Plaintiff's opposition makes no arguments that are responsive to those raised by defendant, cites not law and provides no additional factual information (Plaintiff's Opposition to Defendant's Motion for Summary Judgment, dated Oct. 21, 2013, (Docket Item 25) ("Pl.'s Mem.")). Accordingly, I assume that plaintiff's complaint asserts claims under the FLSA and shall address whether summary judgment is warranted as to those claims.

### B. *Summary Judgment Standards*

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party ... is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To grant the motion, the court must determine that there is no

---

4. At her deposition, plaintiff testified:
 Q. And you're not suing for age discrimination now, right?
 A. No, I'm not, despite the fact that [Torres] did have a few nasty comments during my time there. We were learning a new system of billing. And she just stood up in front of everyone and said, are you going to be able to get this ....
 Q. Did [Torres] make any other comments like that?

A. She always had digs for me, but that was the one that pretty much embarrassed me the most, that I remember like yesterday. *But I'm not going for age, I mean that's not it.*
(McNamara Dep. at 79:12–80:11) (emphasis added). It is difficult to discern from this exchange whether plaintiff was no longer suing for age discrimination or whether she simply considered this claim to be of secondary importance to her other claims.

genuine issue of material fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue derives from the "evidence [being] such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual argument based on "conjecture or surmise," *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). The Supreme Court teaches that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). It is a settled rule that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997).

*McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006); *accord Hill v. Curcione,* 657 F.3d 116, 124 (2d Cir.2011); *Jeffreys v. City of New York,* 426 F.3d 549, 553–54 (2d Cir.2005); *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir.2004).

"Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Coppola v. Bear Stearns & Co., Inc.,* 499 F.3d 144, 148 (2d Cir.2007), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.2007). " '[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]' " *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 788 (2d Cir.2007), quoting *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 298 (2d Cir. 1996).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett, supra,* 477 U.S. at 322–23, 106 S.Ct. 2548, *citing* Fed. R.Civ.P. 56.

As noted in *McClellan v. Smith, supra,* 439 F.3d 137, a court cannot make credibility determinations or weigh the evidence in ruling on a motion for summary judgment.

[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554–555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Liberty Lobby, Inc.,*

*supra*, at 254, 106 S.Ct. 2505; *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n. 6, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby, supra*, at 255, 106 S.Ct. 2505. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & Miller 299. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.*, at 300, 106 S.Ct. 2505. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)[5]; *accord In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009); *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir.2001).

 Defendant notes in its reply that plaintiff has not filed an opposing statement of the material facts as required by Local Civil Rule 56.1 and that pursuant to that rule, I may deem the statements set forth in defendant's Rule 56.1 statement to be admitted. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and, thus, "it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file [a counter-statement under Local Rule 56.1]." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir.2001) (inner quotation marks and citations omitted). Due to the limited record in this case, as a matter of discretion, I decline to consider as uncontroverted the facts set forth in defendant's Rule 56.1 statement by virtue of plaintiff's default, and, to the extent permitted by the authorities discussed above, I have considered the submissions from both parties in assessing whether the defendant is entitled to summary judgment. *See Gantt v. Horn*, 09 Civ. 7310(PAE), 2013 WL 865844 at *1 n. 2 (S.D.N.Y. Mar. 8, 2013) (Engelmayer, D.J.) (reviewing of the record to fill gaps resulting from plaintiff's failure to file a 56.1 counter-statement).[6]

### C. Application of the Foregoing Principles

#### 1. Plaintiff's FLSA Claims

Defendant contends that it is entitled to summary judgment on plaintiff's minimum wage, overtime and retaliation claims under the FLSA because (1) plaintiff has not shown that defendant failed to pay her either the minimum wage or the overtime rate for hours worked beyond forty in a given workweek and (2) plaintiff's complaints to Pawlak and the AP's Human

---

**5.** Although the Court in *Reeves* was reviewing the denial of a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50, the same standards apply to a motion for summary judgment pursuant to Fed.R.Civ.P. 56. *Reeves v. Sanderson Plumbing Prods., Inc., supra*, 530 U.S. at 150, 120 S.Ct. 2097.

**6.** Plaintiff's failure to controvert defendant's motion does not, of course, relieve the defendant of the burden of "adduc[ing] admissible evidence in the record to support the factual assertions contained in [its] Rule 56.1 Statement, as [plaintiff] 'is not required to rebut an insufficient showing.'" *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 07 Civ. 3378(GEL), 2007 WL 4233008 at *1 n. 1 (S.D.N.Y. Nov. 30, 2007) (Lynch, D.J.), *quoting Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003); *see also Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004).

Resources Department were internal complaints, and, do not, therefore, constitute protected activity under the FLSA (Def.'s Mem. at 5–6).

■ Pursuant to the FLSA, every employer covered by the FLSA must pay each employee a minimum of $7.25 per hour. 29 U.S.C. § 206(a). In addition, an employee must be compensated at a rate of no less than 1.5 times the regular rate of pay for any hours worked in excess of forty per week. 29 U.S.C. § 207(a). However, "[t]he FLSA statute requires payment of minimum wages and overtime wages only; therefore, the FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold." *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 201 (2d Cir.2013) (citations omitted). An employee asserting an overtime violation must demonstrate that she worked "40 hours ... in a given workweek as well as some uncompensated time in excess of the 40 hours." *Nakahata v. New York–Presbyterian Healthcare Sys., Inc., supra,* 723 F.3d at 201. Moreover, an employee fails to state a claim for a minimum wage violation "unless [her] average hourly wage falls below the federal minimum wage." *Lundy v. Catholic Health Sys. of Long Island, Inc.,* 711 F.3d 106, 115 (2d Cir.2013). A plaintiff's average hourly wage is determined "by dividing his total remuneration for employment ... in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

Plaintiff has the burden of showing insufficient payment for hours worked. *Yang v. ACBL Corp.,* 427 F.Supp.2d 327, 333 (S.D.N.Y.2005) (Sand, D.J.). However, if at the summary judgment stage the employer fails to keep the required rec-

ords, a plaintiff may meet this burden " 'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.' " *Reich v. S. New England Telecomms. Corp.,* 121 F.3d 58, 66–67 (2d Cir.1997), *quoting Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). "A plaintiff may do so solely through his or her own recollection." *Gunawan v. Sake Sushi Rest.,* 897 F.Supp.2d 76, 84 (E.D.N.Y. 2012); *Yang v. ACBL Corp., supra,* 427 F.Supp.2d at 335.

■ To the extent plaintiff's complaint may plausibly be read as asserting minimum wage and overtime violations of the FLSA arising from the AP's failure to pay plaintiff a sales commission, defendant is entitled to summary judgment on those claims. Plaintiff has not offered any evidence that she worked more than forty hours in a given workweek, nor has she come forward with any evidence that she was paid less than the minimum wage. To the contrary, at all times during plaintiff's employment at the AP she was earning a salary of $40,000 per year, and, until the last three months of her employment, was also earning 2% commission of any sale that she generated and billed (Quan Aff. at ¶ 5). Thus, plaintiff's compensation was more than twice the minimum wage.[7] That plaintiff may have entered into a contractual agreement with Torres for an additional sum is irrelevant to defendant's obligations under the FLSA. Whether plaintiff entered into an enforceable contract with Torres is a matter of state contract law, and even if I were to assume that such a contract existed, its violation would not give rise to an action under the FLSA. *See Monahan v. Cnty. of Chester-*

---

**7.** If I assume that plaintiff worked forty-hour weeks for fifty two weeks each year, she was paid an average hourly wage of $19.23 based on the salary portion of her income alone.

*field,* 95 F.3d 1263, 1284 (4th Cir.1996) ("Simply put, if the terms of the employment agreement do not violate the FLSA, freedom of contract prevails."); *see also Sosnowy v. A. Perri Farms, Inc.,* 764 F.Supp.2d 457, 469 (E.D.N.Y.2011); *Timony v. Todd Shipyards Corp.,* 59 F.Supp. 779, 781 (S.D.N.Y.1945) (Coxe, D.J.), *aff'd,* 151 F.3d 336 (2d Cir.1945). Because plaintiff has failed to come forward with any evidence as to her total income or hours worked, summary judgment in favor of defendant is appropriate as to plaintiff's overtime and minimum wage claims.

██ To the extent plaintiff asserts a retaliation claim under the FLSA, defendant is entitled to summary judgment as to that claim as well. The FLSA's anti-retaliation provision forbids employers from discharging or discriminating against any employee who has "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding ...." 29 U.S.C. § 215(a)(3). "[A] plaintiff alleging retaliation under FLSA must first establish a *prima facie* case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York,* 626 F.3d 47, 53 (2d Cir.2010); *Graves v. Deutsche Bank Secs., Inc.,* 548 Fed.Appx. 654, 656 (2d Cir.2013); *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir.2010). The Court of Appeals for the Second Circuit has held that Section 215 does not encompass "internal complaints" made to an employer, as opposed to complaints made to a governmental agency or the filing of a lawsuit. *See Lambert v. Genesee Hosp.,* 10 F.3d 46, 55–56 (2d Cir. 1993), *abrogated on other grounds, Kasten v. Saint–Gobain Performance Plastics*

*Corp.,* —— U.S. ——, ——, 131 S.Ct. 1325, 1335, 179 L.Ed.2d 379 (2011); *accord Kassman v. KPMG LLP,* 925 F.Supp.2d 453, 473 n. 6 (S.D.N.Y.2013) (Furman, D.J.); *Hyunmi Son v. Reina Bijoux, Inc.,* 823 F.Supp.2d 238, 243 (S.D.N.Y.2011) (Scheindlin, D.J.). Nor does it encompass complaints that are not "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint–Gobain Performance Plastics Corp., supra,* 131 S.Ct. at 1335; *Kassman v. KPMG LLP, supra,* 925 F.Supp.2d at 472.

██ Plaintiff has not proffered any evidence that she filed any complaints regarding FLSA violations prior to her resignation. Plaintiff's complaints to Pawlak and the AP's Human Resources Department were internal complaints made to her employer, and, therefore, are not protected by the FLSA's anti-retaliation provision. Moreover, the only evidence in the record on this issue establishes that plaintiff complained only that she had not been paid what she had been promised, not that defendant was violating the FLSA.

Accordingly, defendant's motion for summary judgment is granted as to plaintiff's minimum wage, overtime and retaliation claims under the FLSA.

### 2. *Plaintiff's ADEA & NYSHRL Claims*

As previously discussed, defendant's motion does not address plaintiff's claims pursuant to the ADEA and NYSHRL.

██ However, as outlined below, plaintiff's age-discrimination and retaliation claims suffer from several clear defects, and, therefore, it appears, at least preliminarily, that summary judgment should be granted on plaintiff's remaining claims *mea sponte* absent a showing by plaintiff that a reasonable jury could return a ver-

dict in her favor. "Under Federal Rule of Civil Procedure 56(f), district courts have discretion to grant summary judgment *sua sponte* '[a]fter giving notice and a reasonable time to respond' and 'after identifying for the parties material facts that may not be genuinely in dispute.' " *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 80 (2d Cir.2014), *quoting* Fed. R.Civ.P. 56(f). Accordingly, plaintiff · is granted thirty days to submit evidence in opposition to the following grounds for dismissing her remaining claims under the ADEA and NYSHRL.[8]

First, plaintiff has not presented evidence sufficient to establish a *prima facie* case of age discrimination under the ADEA and NYSHRL. In order to do so, a plaintiff must demonstrate that she is (1) within the protected age group, (2) qualified for the position, (3) suffered some adverse employment action, and (4) that the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir.2010); *Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir.2003). Even if I were to assume that plaintiff has satisfied the first three requirements, plaintiff cites only one instance that she believes demonstrates that she was denied wages, given more onerous

job duties and constructively discharged because of her age. Plaintiff alleges that on December 14, 2010 at a Group meeting to implement the AP's new billing system, Torres said to her in front of the Group "are you sure you are going to be able to handle this" (Compl. at 6). Plaintiff further alleges that she was the only person more than forty years old at the meeting and that she was the only person asked this question. Without more context, however, it is not clear from plaintiff's description of the incident whether Torres's question had any connection to plaintiff's age. Moreover, although a stray remark may lend support to plaintiff's age dis-. crimination claim when considered with other evidence, "by itself [such remarks are] usually not sufficient proof to show age discrimination." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000); *accord Thompson v. ABVI Goodwill Servs.*, 531 Fed.Appx. 160, 162 (2d Cir.2013); *Kearney v. ABN AMRO, Inc.*, 738 F.Supp.2d 419, 430–32 (S.D.N.Y.2010) (Batts, D.J.). Plaintiff has not brought to light other facts that, when read in context with the incident she describes would suggest an inference of age discrimination.

Second, plaintiff has not presented evidence establishing a *prima facie* case of retaliation under the ADEA and

---

**8.** Because defendant's motion for summary judgment does not address plaintiff's claims under the ADEA and NYSHRL, plaintiff was not required to present evidence sufficient to demonstrate a genuine issue of material fact as to those claims. Where, as here, the nonmoving party has no reason to suspect that the Court will rule on claims not identified by the moving party, the Court's entry of summary judgment *sua sponte* is improper unless the Court first gives the non-moving party notice and some opportunity to respond. *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829–30 (6th Cir.2013); *Coward v. Jabe*, 474 Fed.Appx. 961, 963–64 (4th Cir.2012); *Gentry v. Harborage Cottages–Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir.2011); *J.D. Fields & Co. v. U.S. Steel Int'l, Inc.*, 426 Fed.Appx. 271,

280–81 (5th Cir.2011); *Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir.2010); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765–66 (7th Cir.2006); *Otis Elevator Co. v. George Wash. Hotel Corp.*, 27 F.3d 903, 910 (3d Cir. 1994); *see also Celotex Corp. v. Catrett, supra,* 477 U.S. at 326, 106 S.Ct. 2548 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence."); *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., supra,* 756 F.3d at 80–81; *accord City of New York v. Chavez*, 944 F.Supp.2d 260, 278 (S.D.N.Y.2013) (Forrest, D.J.); *Capitol Records, Inc. v. MP3tunes, LLC,* 07 Civ. 9931(WHP), 2013 WL 1987225 at *7 (S.D.N.Y. May 14, 2013) (Pauley, D.J.).

NYSHRL. To establish a *prima facie* case under these statutes, she must show: (1) that she engaged in protected activity, (2) that she suffered an adverse employment action and (3) that there is a causal connection between the protected activity and the adverse action. *See Gorzynski v. JetBlue Airways Corp., supra,* 596 F.3d at 110; *see also Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465, 467 (2d Cir. 1997). Plaintiff alleges that she was given more burdensome job responsibilities because she disclosed to several employees that Torres broke a promise to split her commission with plaintiff. However, plaintiff has not proffered any evidence that her complaints referred to unlawful discrimination on the basis of her age or that she planned to assert her rights under the ADEA or NYSHRL. Nor do the facts surrounding Torres's alleged failure to pay plaintiff suggest that defendant diminished plaintiff's compensation or increased her duties in response to plaintiff's complaints regarding alleged violations of the ADEA and the NYSHRL. Complaints that do not alert the employer of an employee's assertion of rights under the ADEA and the NYSHRL are not protected under the anti-retaliation provisions of the ADEA or corresponding state laws. *See Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir.1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by [the ADEA]."); *Caskey v. Cnty. of Ontario,* 800 F.Supp.2d 468, 472 (W.D.N.Y.2011); *Cordoba v. Beau Dietl & Assocs.,* 02 Civ. 4951(MBM), 2003 WL 22902266 at *9 (S.D.N.Y. Dec. 8, 2003) (Mukasey, D.J.). There is no indication

that plaintiff raised with defendant the possibility that age discrimination had occurred until after she was terminated (*See* Compl. at 5).

In order to avoid the entry of summary judgment of plaintiff's claims under the ADEA and NYSHRL, plaintiff must submit sufficient evidence to establish the essential elements described on pages 21–24. Fed.R.Civ.P. 56(c).[9]

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, defendant's motion for summary judgment (Docket Item 17) is granted with respect to plaintiff's claims under the FLSA. Plaintiff is also granted thirty days to present evidence or otherwise show cause why summary judgment should not be granted dismissing the complaint to the extent it can be read to assert claims under the ADEA or the NYSHRL. The Clerk of the Court is directed to mark Docket Item 17 closed.

SO ORDERED.

**Local Rules of the United States District Courts for the Southern and Eastern Districts of New York**

**Effective September 3rd, 2013**

**with amendments to the SDNY Rules for the Division of Business Among District Judges**

**Rule 13 effective 1/1/2014, Rules 18 and 21 effective 1/13/2014**

***Adopted* by the Board of Judges of the Eastern District of New York and the Southern District of New York**

***Approved* by the Judicial Council of the Second Circuit**

which would be admissible, set forth as required by Fed.R.Civ.P. 56(c).

---

9. A copy of the Local Rule 56.2 notice to *pro se* litigants is attached to this Opinion and

Order for plaintiff's benefit.

## COMMITTEE NOTE

The requirement embodied in Local Civil Rule 56.1 is firmly rooted in the local practice of the Southern and Eastern Districts, and the Committee recommends its retention. The language of Local Civil Rule 56.1 was revised in 2004 to make clear that any statement pursuant to Local Civil Rule 56.1 must be divided into brief, numbered paragraphs, that any opposing statement must respond specifically and separately to each numbered paragraph in the statement, and that all such paragraphs in both statements and opposing statements must be supported by citations to specific evidence of the kind required by Fed.R.Civ.P. 56(c). The Committee believes that the language adopted in 2004 sets forth these requirements clearly, and does not recommend any changes in that language.

## Local Civil Rule 56.2. Notice to Pro Se Litigant Who Opposes a Summary Judgment

Any represented party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion, the following "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" with the full texts of Fed.R.Civ.P. 56 and Local Civil Rule 56.1 attached. Where the pro se party is not the plaintiff, the movant shall amend the form notice as necessary to reflect that fact. .

## Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment

The defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that the defendant has asked the Court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil Procedure and by Local Civil Rule 56.1. The full text of Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 is attached.

In short, Rule 56 provides that you may NOT oppose summary judgment simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising specific facts that support your claim. If you have proof of your claim, now is the time to submit it. Any witness statements must be in the form of affidavits. An affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial. You may submit your own affidavit and/or the affidavits of others. You may submit affidavits that were prepared specifically in response to defendant's motion for summary judgment.

If you do not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant, the Court may accept defendant's facts as true. Your case may be dismissed and judgment may be entered in defendant's favor without a trial.

If you have any questions, you may direct them to the Pro Se Office.

## COMMITTEE NOTE

Local Civil Rule 56.2 plays a valuable role in alerting *pro se* litigants to the potentially serious consequences of a motion for summary judgment, and to the requirements for opposing such a motion.

The Committee recommends certain changes in the text of the notice required by the rule in order to make it more understandable to non-lawyers.